UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

JIMMY HOWARD MALONEY          )
                              )
V.                            )          NO. 2:11-CV-341
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security )

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of

the Court and 28 U.S.C. § 636 for a report and recommendation with respect to the

administrative denial of his application for disability insurance benefits under the Social

Security Act. Both the plaintiff and the defendant Commissioner have filed dispositive

Motions [Docs. 9 and 10].

The sole function of this Court in making this review is to determine whether the

findings of the Secretary are supported by substantial evidence in the record. *McCormick*

*v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial

evidence" is defined as evidence that a reasonable mind might accept as adequate to support

the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough

to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought

to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607

(1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor

decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even

if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence,

"a decision of the Commissioner will not be upheld where the SSA fails to follow its own

regulations and where that error prejudices a claimant on the merits or deprives the claimant

of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff's action for judicial review presents a highly unusual circumstance in that the Administrative Law Judge ["ALJ"] found that the plaintiff was disabled and awarded benefits. His hearing decision was reviewed by the Appeals Council on its own motion and it reversed the favorable determination, finding that the plaintiff did not have a severe impairment prior to the expiration of his insured status on September 30, 2009.

Plaintiff asserts that he has severe impairments of severe asthma, diabetes, bilateral carpal tunnel syndrome and sleep apnea, and he was found to have all of these by the ALJ (Tr. 16). His past relevant work was primarily as a welder with some work as an electrician before he claims he became unable to even do that. He has a high school education and was 46 years of age when his insured status expired on September 30, 2009 (a "younger" individual).

There are definite "issues" in this case regarding what medical evidence was before the ALJ and before the Appeals Council. The "claims folder" which contains the administrative record filed by the Commissioner in this action contains all of the evidence which was undisputedly before the ALJ and Appeals Council.

At the administrative hearing, plaintiff's counsel amended the alleged disability onset date to May 14, 2009, only four and one-half months before his insured status expired (Tr. 22).

Plaintiff's treating family doctor is Dr. John A. Short in Sneedville, Tennessee. On July 1, 2010, Dr. Short was requested by the state Disability Determination Section to provide in-patient and out-patient records from August 4, 2007 "TO PRESENT" (Tr. 179). In response to that request, Dr. Short provided various records dated between May 6, 2008 and June 29, 2010 (Tr. 180-198). The first record is of an office visit on June 6, 2008 for a checkup and medication refill. One of the diagnoses noted was type II diabetes, uncontrolled

2

(Tr. 198). On September 23, 2008, plaintiff again reported to Dr. Short for "checkup diabetes" (Tr. 197). On January 22, 2009, Dr. Short's staff noted a discussion of a detailed "diabetes management program" with the plaintiff (Tr. 195). On September 30, 2009, the plaintiff again saw Dr. Short for a lumbar strain. Again, one of the conditions noted was type II diabetes (Tr. 193).

On November 13, 2009, plaintiff went to see Dr. Short for a sore throat and cough. Again, one of his noted conditions was diabetes (Tr. 192). On June 28, 2010, plaintiff saw Dr. Short for sleep problems and again was noted to have uncontrolled diabetes (Tr. 190).

Dr. Short also produced various laboratory reports for the plaintiff. On May 7, 2008, his Hemoglobin Alc was 11.9%. The lab report notes that "current guidelines recommend a treatment goal of <7.0% for diabetic patients." The report also states that "average blood glucose can be roughly estimated from the %HbAlc" using a formula of 30.9 x %HbAlc - 60.6. The use of that formula would yield a blood glucose reading of 307.11 for that date (Tr. 187). More blood work from the same lab on September 23, 2008, revealed a Hemoglobin Alc of 7.2%. The report says a "healthy adult" will have a reading of 4.8 to 5.9 (Tr. 186). On October 27, 2009, the reading was 10.9% (Tr. 184). On June 28, 2010, the reading was 11.1 (Tr. 181).

There are other treatment notes from Dr. Short from the period between March 22, 2011, and May 26, 2011 (Tr. 217-221). These records continue to show the same diagnosis of diabetes.

On July 5, 2011, Dr. Short completed a medical assessment (Tr. 239-246). In it, he described in detail the various permanent restrictions he placed upon plaintiff due to his asthma, carpal tunnel syndrome, and diabetes, ending with the statement that "I do feel like the patient is unfortunately completely disabled at the present time" (Tr. 246). One of the statements on the form was that "the limitations above are assumed to be your opinion

3

regarding current limitations only. However, if you have sufficient information to form an opinion within a reasonable degree of medical probability as to past limitations, on what date were the limitations you found above first present?" Dr. Short did not make any notation respecting this question (Tr. 244).

After the ALJ rendered his decision on July 19, 2011, Dr. Short submitted a letter dated August 26, 2011, prior to the final decision of the Appeals Council. He stated:

> I have been asked to comment about Mr. Maloney regarding his past history prior to 2009. With records dating back as far as 1999, patient had an HgAlc of 8.5 in November of 1999, 7.4 in August 2002, 7.6 in march of 2003, 9.0 in August of 2004, 10.6 in October of 2005, 11.9 in May of 2008 with a slight improvement in September 2008 at 7.2 then repeat in October of 2009 of 10.9. In reviewing these he has had poorly controlled diabetes since 2009. He has had no Alc's of less than 7. There was an Alc of 7.0 and 7.2, but I cannot find any Alc's of less than 7 on the chart.
>
> Prior to 2011 he has also been seen in the past by Dr. Elise Schriver, with a note dating back to 04/20/2001, showing that he has occupational asthma due to welding fumes and ethanolamine exposure. Reading over AMA guidelines at that time with the 5th edition rating for permanent impairment which would classify him as a Class 3 with a 25-50% impairment to the whole body (April 2001). Patient has been followed intermittently by Dr. Schriver since that time. He was able to follow up with her for his pulmonary needs as long as he had insurance. Unfortunately, the patient still suffers from asthma (severe) and he is still having a lot of coughing and nocturnal awakenings.
>
> Given the fact that these are onging problems prior to 2011, I want to comment on the fact that he had uncontrolled diabetes prior to 2011 as well as uncontrolled and severe asthma prior to 2011.
>
> I greatly appreciate the opportunity to comment on the fact that these problems have been ongoing and long standing in this nice gentleman.

(Tr. 247).

Also in the record are treatment notes from Dr. Seth E. Brant, a pulmonologist. These records are described in the Commissioner's brief as follows:

> On January 4, 2010, Dr. Brant, a pulmonologist with University Pulmonary and Critical Care, evaluated Plaintiff on a referral from Dr. Short (Tr. 175). He noted that Plaintiff had a history of asthma and had previously been followed at University Pulmonary and Critical Care but had not been seen since 2004 (Tr. 175). Plaintiff told Dr. Brant that he was first diagnosed with asthma in the late 1990s and had manageable to minimal symptoms until early to mid-fall of 2009 (Tr. 175). Then, with cooler temperatures, he began to experience a variety of worsening pulmonary symptoms (Tr. 175). Dr. Brant noted that Plaintiff's management of his asthma

4

seemed to be impaired by chronic sinusitis with concurrent postnasal drip and significant noncompliance with his CPAP machine (Tr. 177). Dr. Brant recommended Plaintiff start a Pulmicort inhaler, trial of oral antihistamine, continuing albuterol inhaler and nebulizer, continuing Singulair, and 100 percent compliance with CPAP (Tr. 177). He advised Plaintiff to return in six months or sooner if needed (Tr. 178).

Plaintiff returned on October 28, 2010, at which time he reported an increased cough and chest tightness but no wheeze (Tr. 223). Plaintiff was next seen on January 24, 2011 when Dr. Brant's assistant noted that Plaintiff was not adhering to his CPAP and continued to have inadequate control of his asthma (Tr. 226). On March 7, 2011 Plaintiff returned and reported that his breathing was significantly improved and he could not "believe the dramatic improvement" in his life (Tr. 228). He returned to Dr. Brant on April 4, 2011 with complaints of cold-like symptoms which were exacerbating his asthma (Tr. 230). Dr. Brant prescribed antibiotics and advised Plaintiff return in six to eight weeks (Tr. 231).

[Doc. 11, pgs. 3-4].

The only other medical record of any significance in the claims folder is a note from Dr. Paul W. Gorman, and orthopedic surgeon, dated February 18, 1999, relating to the plaintiff's carpal tunnel syndrome. He stated that the plaintiff was "unchanged from prior visit." Dr. Gorman stated the plaintiff had a full range of motion and well healed incisions from his carpal tunnel surgery. He stated that the plaintiff "refused to squeeze the grip meter with the right hand and had 40 pounds of grip with the left." He stated that plaintiff "was maintained on permanent light duty, no lifting, pushing, pulling, carrying, or gripping more than 20 pounds using both hands together." (Tr. 222).

With the exception of the August 26, 2011 letter from Dr. Short, this is all of the medical source evidence which was *undisputedly* before the ALJ.

In the administrative hearing, the plaintiff testified in detail regarding the difficulties he had from his carpal tunnel syndrome, diabetes, asthma and sleep apnea. He testified that these problems existed in 2009, and long before, well prior to the expiration of his insured status. (Tr. 22-34). Bentley Hankins, a vocational expert, stated that if the plaintiff had the limitations described in Dr. Short's medical assessment, there would be no jobs he could perform. (Tr. 27).

5

In his hearing decision, the ALJ found that the plaintiff "has been disabled from may 14, 2009, through the date of this decision." (Tr. 14). He found, because of the above-described severe impairments, that the plaintiff "lacks the residual functional capacity to perform even sedentary work..." and was "unable to perform work activity at any level of exertion on a regular and sustained basis..." (Tr. 16). The ALJ relied upon the notes from Dr. Brant and Dr. Short's assessment. He also found "the claimant's statements concerning the intensity, persistence and limiting effects of (the plaintiff's) symptoms generally credible." (Tr. 17). He found, based upon the testimony of the vocational expert, that there were no jobs which the plaintiff could perform and that Mr. Maloney was, in fact, disabled. (Tr. 18-19).

On August 22, 2011, the Appeals Council sent its notice of to plaintiff of its proposed action to reverse the ALJ's favorable determination "on the basis that a severe medically determinable impairment was not present between May 14, 2009, which is your alleged onset date, and September 30, 2009, which is the date that you were last insured for a period of disability and disability insurance benefits." (Tr. 85- 86). Finding that the record contained no substantial evidence that the plaintiff had a severe impairment during that period, the Appeals Council focused on the single treatment note (Tr. 193) of Dr. Short dated September 30, 2009, which indicated lumbar stain and muscle spasms, and "noting" diabetes mellitus and hypertension. They also noted that the treatment by Dr. Brant for plaintiff's asthma commenced 3 months after the insured states expired, and stated "no clinical findings in this (Dr. Brant's) report...specifically relate to the period at issue, nor does Dr. Brant specifically associate symptoms shown in January 2010 to that period." (Tr. 86). The Appeals Council likewise dismissed the ALJ's findings regarding the plaintiff's carpal tunnel syndrome and diabetes. It stated "as for carpal tunnel syndrome, the only medical evidence pertinent thereto is a past surgical history prepared in January 2010 (Exhibit 1F, at page 2) indicating

6

carpal tunnel release in 1996 and a February 1999 nerve conduction report (Exhibit 7F) that showed normal nerve amplitudes and conduction velocities, with full range of motion in all fingers.[1]  With regard to diabetes mellitus, medical records dated in march 2011 (Exhibit 6F, at page 5) show complaints of leg, knee and foot pain and numbness with subsequent diagnoses of neuropathy (Exhibit 6F, at page 5) and gout (Exhibit 6F, at page 2).   The medical evidence does not demonstrate, nor has any health care provider concluded, that either carpal tunnel syndrome or diabetes mellitus were severe between your alleged onset date and..." the date plaintiff was last insured.  (Tr. 86-87).  As for Dr. Short, the Appeals Council stated that his July, 2011 medical assessment "when presented with the opportunity to relate disability prior to 2011, explicitly did not do so."  (Tr. 87).   The Council invited plaintiff to present more evidence or a statement about the facts and the law "about 'disability' starting on or before September 30, 2009...."  (Tr. 87).

In response to the Notice, plaintiff submitted the August 26, 2011 letter from Dr. Short mentioned above at page 4 herein (Tr. 247).   Plaintiff's counsel also submitted a brief on September 11, 2011 along with Dr. Short's letter.  The letter pointed out the 25 to 50% impairment to the body as a whole in 2001 due to asthma, a June 2001 award of a 65% permanent impairment in a worker's compensation suit, the evidence in Dr. Short's records regarding plaintiff's uncontrolled diabetes, and the "de minimis" standard regarding proof of the existence of a severe impairment.  (Tr. 171-173).

On September 16, 2011, the Appeals Council issued its final decision (Tr. 4-7).  It noted a "lack of clinical findings" in Dr. Brand's report which would indicate that the plaintiff had the "symptoms (of severe asthma) shown in January 2010..." when his insured

---

[1]The Appeals Council did not mention the restriction in the 1999 report to "permanent light duty, no lifting, pushing, pulling, carrying, or gripping more than 20 pounds using both hands together."  (Tr. 222).

status expired September 30, 2009. It held that "the medical evidence does not demonstrate, nor has any health care provider concluded, that either carpal tunnel syndrome or diabetes mellitus were severe between the claimant's alleged onset date and September 30, 2009..." (Tr. 5).

Regarding Dr. Short's August 26, 2011 letter, the Appeals Council stated the mention of plaintiff's uncontrolled diabetes by Dr. Short from 1999 to 2009 was inconsequential because "he did not submit any medical records or make any statement indicating that the diabetes would have any significant impact on the claimant's ability to do work." The Appeals Council also noted Dr. Short's reference to the report of Dr. Shriver in 2001 that the plaintiff had a degree of disability from occupational asthma, stating that "Dr. Schriver's actual treatment records are not in evidence..." and that "plaintiff worked after the worker's compensation award in 2001 "which suggests that his impairment at that time was not severe." Also, the Appeals Council stated that Dr. Short, regarding plaintiff's asthma and uncontrolled diabetes, did not "provide any additional evidence or medical findings substantiating this opinion and does not state when before 2011 the claimant's conditions became 'severe.'" (Tr. 6).

With respect to counsel's letter pointing out the worker's compensation finding in 2001, the Appeals Council stated "Worker's Compensation claims are adjudicated under different legal criteria than Social Security claims, and it does not necessarily follow that an award of Worker's Compensation demonstrates disability under Social Security criteria." (Tr. 6).

Accordingly, the Council found that plaintiff "did not have any medically determinable impairment or combination of impairments that had more than a minimal effect on his ability to do any work activity between May 14, 2009, his alleged onset date, and September 30, 2009, the date that he was last insured..." Accordingly he was found to be not

8

disabled. (Tr. 6-7).

Plaintiff argues that the Appeals Council erred in several respects. First, he asserts that it did not have the entire record submitted to the Commissioner before it. He states that it did not have substantial evidence before it. He points out that "Step 2" of the sequential evaluation process is a de minimis hurdle put in place to screen out cases of no substance, quoting *Farris v. Secretary of Health and Human Services*, 773 F.2d 85 (6th Cir. 1985), which held that an impairment is only "non-severe" if it would constitute "a slight abnormality which has such a minimal effect...that it would not be expected to interfere with an individual's ability to work, irrespective of age, education and work experience." He points, as only one example, to the February 1999 imposition of a "permanent light duty" restriction on the plaintiff as a result of his carpal tunnel surgery by Dr. Gorman, which limited the plaintiff to dealing with a maximum of 20 pounds using both hands (Tr. 222). He argues that, while the worker's compensation finding of 65% permanent disability to the body as a whole from 2001 would not be determinative at Step 5 regarding whether the plaintiff could not engage in substantial gainful activity, it is powerful evidence at the Step 2 inquiry of whether a severe impairment exists. Also, he states that the Appeals Council had no basis for overruling the ALJ's determination that the plaintiff was credible, having actually observed the plaintiff at the hearing and having gauged the veracity of plaintiff's statements regarding his impairments prior to the expiration of his insured status.

The Commissioner argues that the record is scant, and focuses entirely on the period between May 14th and September 30th of 2009. He restates the Appeals Council's rationale that plaintiff worked some after both his carpal tunnel surgery and his workers compensation award. He points out that the plaintiff engaged in substantial gainful activity after the alleged onset of his consistent 300+ blood glucose readings from his uncontrolled diabetes. He argues that it was the responsibility of plaintiff to make sure that the Appeals Council had

the records of Dr. Schriver appended to plaintiff's brief regarding the plaintiff's asthma in 2001, and that evidence from 2001 "is so remote that it cannot establish the existence of a severe impairment during the period under review" (May 14th to September 30, 2009). Also, he argues that Dr. Schriver's treatment records and opinion of "a 26 to 50% permanent impairment rating" is "undermined" by the lack of treatment for asthma between 2004 and 2010.

The analysis of the Appeals Council's reversal of the ALJ must begin and end with a clear understanding that this was a Step 2 denial, where plaintiff had **only** to show the existence of a severe impairment, which is undisputedly a de minimus hurdle. It is not a consideration of whether there was substantial evidence to support a finding of residual functional capacity showing a capability for engaging in substantial gainful activity. The Step 2 threshold favors a plaintiff while at later steps in the process his or her burden is much more precisely focused and thus increased.

Dr. Schriver's records are attached to the plaintiff's Motion. The Commissioner correctly states that this Court cannot factor evidence which was not before the administrative adjudicator unless it is new and material and good cause is shown for not submitting it at the adjudicative phase. However, this Court can find no basis for not believing that plaintiff's counsel sent this to the ALJ on July 11, 2011, as indicated by Exhibit C to Doc. 9. The fax call report indicates that the transmission was successful. Counsel told the Appeals Council that he would resubmit the records immediately if they did not have them. In any event, the plaintiff should not pay for the mistakes of the Office of Hearings and Appeals because someone on their staff failed to include this important information in the record before the case was adjudicated.

In any event, the ALJ's July 5th hearing decision does not mention Dr. Schriver, even though he still found the plaintiff to have severe asthma based on Dr. Brant's examination

10

in January, 2010, three months after plaintiff's insured status expired. Indeed, it strains credulity to imagine a person with a long history of asthma developed "severe asthma" in just three months. One would think that severe *controlled* asthma would present at least some environmental restrictions, and such restrictions would pose more than a slight limitation on engaging in a broad range of work activities.

However, if Dr. Schriver's records, attached as Exhibit A to Document 9 are inserted into the mix, they clearly show a severe permanent impairment over 8 years before the plaintiff's insured status expired. Not only did Dr. Schriver opine that plaintiff had a permanent impairment, he recommended that the plaintiff quit his welding job. However, plaintiff told Dr. Shriver that he has "a daughter with cerebral palsy and has to have medical insurance." [Doc. 9-2, at pg 7].

As for the diabetes, the notes of Dr. Short that are in the record clearly indicate a long history of unsuccessful attempts at treatment before September 30, 2009. Bearing in mind yet again that we are only talking about whether uncontrolled diabetes imposed a severe impairment, Dr. Short's records, and the plaintiff's hearing testimony which the ALJ accepted as true, indicate that it was prior to the expiration of the plaintiff's insured status.

One piece of evidence regarding the plaintiff's limitations prior to the expiration of his insured status that was undisputedly before the ALJ ***and*** the Appeals Council is Dr. Gorman's report (Tr. 222) that plaintiff was restricted to permanent light duty by his carpal tunnel aftereffects, including manipulative restrictions on pushing, pulling, carrying and gripping more than 20 pounds with both hands together. This was substantial and unrebutted evidence of a severe impairment, even if not of entitlement to benefits.

The Appeals Council did not remand the case to the ALJ with instructions to further develop the record regarding these impairments, or even to proceed beyond Step 2 of the process, but instead simply found that the plaintiff did not have a severe impairment. There

is undisputedly evidence in the record that he did have a severe impairment, including the belief in the veracity of his testimony by the ALJ as to when the plaintiff experienced the effects of his impairments.  In the opinion of the Court, the Commissioner's position is not substantially justified.

It is respectfully recommended that case be remanded to the Commissioner for further proceedings beyond Step 2 of the evaluation process, and that the plaintiff's Motion for Summary Judgment [Doc. 9] be GRANTED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 10] be DENIED.[2]

Respectfully submitted:


 s/ Dennis H. Inman
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived.  28 U.S.C. 636(b)(1).